We'll move on to the next case of the day, United States v. Sheth, Appeal 17-2741. Ms. Gelfman? Good morning, Your Honors. May it please the Court, my name is Ilana Gelfman and I represent the appellant, Sushil Sheth. In Sheth's plea agreement, the government promised him that any payments made in satisfaction of the forfeiture judgment shall be credited to any outstanding restitution judgment. And today I'd like to make three points regarding that provision. First, the interest that had accrued on the Harris Bank account funds prior to forfeiture was forfeited and therefore should be credited to his outstanding restitution judgment. I'm going to stop you right there because something has been bothering me. Was the district court made aware that the marshals had placed the Harris Bank funds in an interest-bearing account which had earned the $225,000? If so, where is that in the record and why wasn't it mentioned in the record? So it is in the record, Your Honor. Let me just grab it. If you look at docket number 270, the government actually said so in their brief on page 5. They say Sheth claims the United States owes him an additional credit in the form of interest earned on those funds from 2007 until 2010. The United States tendered discovery to Sheth showing that the marshal service calculated such interest to be about $225,000. So the government had... Sorry? Why isn't it in the district court's order? Or did I miss that? You didn't miss anything. It looks like the district court, frankly, was confused and thought that it was not in an interest-bearing account, but it was. And generally, in fact, seized assets are. The seized asset deposit fund is always interest-bearing. That's been the case since 1992. It's a matter of public record. It's in every financial statement issued by the DOJ regarding the seized asset deposit fund and the asset forfeiture fund. So I think, honestly, this was a case of the district court making a simple error and thinking that there was an interest that accrued. So that is, in fact... I'll just start with that first point, which is the interest that accrued was forfeited. And the interest both accrued pre-forfeiture. The government kept it after the forfeiture order, and it therefore was accrued. We know that because the forfeiture order says that all right, title, and interest in the accounts was forfeited. That right, title, and interest includes the right to the accrued interest. That corresponds with how we think about interest in principle generally. Interest follows principle. The Supreme Court has said that's been the law since the mid-1700s. This court says just like if you own an apple tree, you own the apples. If you own an interest-bearing account, you own the interest. And the Supreme Court has also made clear that merely possessing an interest-bearing account doesn't mean that you own the interest. What matters is who actually owns the principle on it. So what happens if the seized property is, let's say, common stock? It's seized in 2007. It's forfeited in 2010 when it's lost half its value. How would you apply the language in the plea agreement to that situation? So the way that the district court interpreted the term payment was it depended on when it was liquidated. So whenever it was liquidated, that is when the amount... For the benefit of the government. For the benefit of the government, right. So if it had been liquidated somehow prior to it being seized and was just cash, then it gets credited at that point. But the district court said that if it were liquidated later and it looked, for instance, at real property and some of that real property was sold after the forfeiture order, it looked at the value at that time. So the forfeiture order... The seizure was in 2007. The indictment was in 2009. So was the plea agreement. And the forfeiture order came in in 2010. If the government had either seized or later taken possession of the property due to the forfeiture order and then sold the property in 2012 under the district court's interpretation of the term payment, which is that it meant that it was liquidated essentially, it was that value in 2012 that would be credited. Does that make sense to you? Do you agree with that? That should not be a problem here because in this case it was from the time of seizure in cash form. Well, I know, but I'm trying to understand. There's the danger of the heads we win, tails you lose kind of argument from either side here. And that's why I'm trying to understand what happens if there's a drop in value of the seized but not yet forfeited property. So Sheth, in signing the plea agreement, was taking a risk essentially. If property decreased in value, he would have less property that was credited to his... to the forfeiture judgment and to the restitution judgment. But if the property increased in value, as this property did because of the interest that was earned on the account, he would benefit from that as long as it happened prior to the forfeiture and therefore the forfeited property amount was larger. Would credit for this interest actually help Dr. Sheth at this point, given the overall magnitude of his obligations? So the district court not only determined the ratification motion, but also performed as requested an accounting of the amount that was left on the restitution. And this matters for determining how much is left on his restitution order. Okay. May or may not have much practical... It is not in the record. I know he has a job. I don't know to what clip he's paying off the restitution judgment. That information is not in the record. Okay. But as I was saying, the Supreme Court has established... We know that the government had possession of the seized property, but what it didn't have at that point was ownership of the principal. And under the Supreme Court's precedent, that's not enough to make you own the principal. We know that from cases like Phillips and from cases like Webb's Fabulous Pharmacies. In Phillips, if it had been the case that ownership of the principal was enough, then either the lawyer who had the IULTA account or the bank would have owned the interest, but no, instead the Supreme Court said that the client who owned the principal owned the interest regardless of who possessed the bank account. And similarly in Webb's Fabulous Pharmacies, that's actually a case that's quite similar to the case here because there was essentially an escrow account for an interpleader. And if it had been right that the interest belonged to the person who possessed the account regardless of who had a right to the principal, then the Florida County Clerk's Office would have owned the interest in that case. But no, the Supreme Court said that's not the case. The interest belongs to whoever owns the principal. Interest follows principal, and in this case, the interest followed the principal in the sense that the principal was forfeited and so was the interest. And we know that also because of the language of the forfeiture statute. So Congress conceives a forfeiture to cover not just the principal and then you automatically own whatever the proceeds are, but instead what's actually forfeited is both the principal and the interest. So 18 U.S.C. 982A.7 says that a court shall order the person to forfeit property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense. So in this case, it's not just the amount that was the gross proceeds of the offense, but also whatever was derived. Do you want to save time for rebuttal? I would like to. I believe I still have time. That's your total time. That's my total time. I'd like to reserve the rest for rebuttal. Thank you. Okay. Thank you very much, Ms. Gelfman. Mr. Stewart for the government. Good morning. May it please the Court. Counsel for Dr. Sheth. Your Honor, in this case what Dr. Sheth is doing is he's looking for credit for interest on money that never belonged to him. He's further seeking credit based on an argument that he never made at the district court. With regard to the interest, there's a couple of points, a couple of clarifications that need to be made. There's three kinds of interest that were talked about in the district court. The interest that banks actually paid on money and accounts that Dr. Sheth had at individual banks that was subsequently forfeited, both the principal of those accounts and the interest. Those were the First Bank and the Oppenheimer? Yes, things like that. Okay. With those accounts, during the pendency of the proceedings, the money was held by the bank. What we're talking about, the $6.5 million that was held at Harris Bank, that was seized even before the information was filed. That was seized and turned over and put into the forfeiture fund at that point. When did the government take title to that? Well, I think that formally the government took title to the property when the preliminary order of forfeiture was entered. 2010? That would have been in 2011, 2010-2011. But when did Dr. Sheth have ownership of that money? The answer is never. In his plea agreement and in the preliminary order of forfeiture, Dr. Sheth conceded that all those funds in the Harris Bank account were the proceeds of his fraud. He never owned that money. So why did he get any credit for any of it towards the forfeiture? Well, because the money we actually seized, he did get credit for the $6.5 million that we actually seized. But he's seeking credit for that. Once the money, that $6.5 million was seized and put into the forfeiture fund. So what happens if property is wrongfully seized and is later returned? Who gets the interest? Right, that's a different circumstance. There's a wrongful retention. And the answer is that it goes back to the owner, right? By statute, no, because the sovereign immunity has been waived for the no interest rule in Shaw. So what Dr. Sheth is contending here as a practical matter is that he's entitled to interest earned on the government's money, not on his. Why do you think that $225,000 isn't mentioned in the judge's order? I'm not sure I understand your question, Your Honor. Well, it's basically the same question that I asked Ms. Gelfond. Was the district court made aware that the marshal had placed the Harris Bank funds in an interest-bearing account, which had earned $225,000? Well, I can't say that for sure, Your Honor. All I know is that we produced the discovery to Dr. Sheth. We mentioned it in our own briefs. And I'm not sure that there's nothing. But I think that the reason why that point was never clarified or specified is because the argument that was made below was a simple legal argument. Under the plea agreement, interest was not mentioned. And under the rule in Shaw, the government is simply not liable for interest. I don't understand your sovereign immunity argument at all under these circumstances. Nor do I. He's not asking for money to be returned to him. He's simply asking for an accounting credit for money that did move from having been under his control wrongfully, but under his control, to the government. Well, Your Honor, it does imply sovereign immunity and the no-interest rule because of the reason that asking for a credit in these circumstances and these are very unusual circumstances, but asking for a credit in this case is the equivalent of a party in a civil proceeding faced with a claim for money saying, hey, I already paid that. And that's basically what Dr. Sheth is saying. He's saying, I already paid that restitution by the credit I should have received. So why does that implicate sovereign immunity? Because he's asking for interest. No, he's asking for credit for money that moved from him to the government. He's not asking the government to pay him back. Right, and he's getting credit for the $6.5 million that the government actually took from Harris Bank. We understand that. Can you explain the different treatment for the other accounts where he did get credit for interest and the Harris Bank? Right. In each of those cases, Dr. Sheth had put money in bank accounts like the open hiring account you mentioned, and the contract between Dr. Sheth and that bank was that he would earn interest. The bank would give him interest on that money. And then we seized that money and brought it into the forfeiture fund. Now, the terrorist accounts might have been bearing interest at the point we seized them. Presumably. But once we seized them and put them into the forfeiture fund, they were no longer bearing interest under the contract that Dr. Sheth had. They were bearing interest under the government's account, right? Our money was bearing interest at that point. Well, it's in limbo at that point, right? You have possession of it. Title remains disputed, right? Until there's a forfeiture order, right? Yes. Okay. Can I ask you the same question I asked about stock? Who's at risk of a decline in value? Well, you know, there's really no risk in most situations. In most situations, the government is merely forfeiting something. Indulge me. Indulge me. Suppose it's stock. In that case, I think it would depend on whatever understandings were reached when the property was taken by the government. It all depends on. . . Well, you have the power to take the property. It's not necessarily a matter of contract. Is it? That's correct. You know, this sort of situation was faced in this court's decision in, I think, U.S. v. Patel's is the name of it, where stock was held. Stock was given over to the government as bond, and then when the defendant was convicted, that money was pledged to pay down the restitution. And in those circumstances, the money did go down. I mean, rather, the stock did go down in value, and what ultimately the district court decided, what this court affirmed, was that because of the circumstances, the defendant would only get credit for the value when the stock was liquid. Actually realized. Right. I am still in a quandary about sovereign immunity because I absolutely do not understand why cases based on sovereign immunity apply here, where no suit is brought against the government, and the only issue is determining the proper valuation of an asset at the time of forfeiture. Thank you. You know, I think that Dr. Sheff is relying on his formal position as a defendant in this case. But as a practical matter, what happened here was the government gave Dr. Sheff credit for about $10 million in money that had been forfeited. Dr. Sheff then affirmatively asked the court for more credit than the government was willing to give, and it was in the form of this interest. So in those circumstances, Dr. Sheff is the claimant. Dr. Sheff is the proponent. He's the one that's seeking something from the court. He's asking basically for the court to order the government to reduce his restitution debt by a certain amount. And how does reducing a restitution debt implicate the government's sovereign immunity? Because the particular form of credit that Dr. Sheff is looking for in this case is interest. And under Shaw, in very similar circumstances, this court decided the case of U.S. v. Iran, in a very similar case, a civil forfeiture case. But in that case, the settlement agreement that settled the in-rem civil forfeiture action didn't provide for interest. Later on, the claimants in that case sought interest. And this court said, well, under Shaw, they're not entitled to interest because it wasn't explicitly provided for in the settlement agreement. And that's on all fours with this case. So I think that when looking at it accurately, what the lineup of the parties were below, it was really Dr. Sheff in the position of claimant and the United States defending against that claim. And those are the kind of circumstances in which the government can assert sovereign immunity. So if I'm a taxpayer with a dispute with the government and the government says I owe it $10,000 and I say, well, I've got this other related claim for $1,000 that ought to be offset against that, is that subject to sovereign immunity rules, my offset claim? Yes, it is. It is? It is. I don't. I'm sorry. The only question here is the value of an asset at the time of forfeiture. You weren't hauled into court and forced to pay. The government wasn't hauled into court and forced to pay damages. That's what's inherent in sovereign immunity, it seems to me. I'll go back again, but I think sovereign immunity is inapplicable here. Well, certainly as a formal matter, the government is not subject to a claim for interest, and here especially so, because it was never even contemplated between the parties. And I think that the argument that Dr. Sheff is trying to make is Dr. Sheff sees all this and he says, well, in the plea agreement it says payments, and implied in the word payments is interest, but that's simply not true. So who has the interest? Sorry? Who has the interest now? The government. It's with the government, that's right. And keep in mind, this money Dr. Sheff stole from the government based on fraudulent billing. That's why it's forfeited. That's why he spent a lot of time in prison. We totally get that, believe me. I will say this is not a case that inspires lots of sympathy for Dr. Sheff, but we're dealing here with kind of the tip of the tail of the dog in the whole case. I understand that, but we do have some broader implications. So payment is not mentioned in the plea agreement, and I don't think that a common sense understanding of payment would include interest. Property is a bag of sticks. Can I just ask you one more quick question, Mr. Stewart, which was how could Dr. Sheff's wife, Anita, have litigated her claims to the property in dispute without notice to Dr. Sheff? I realize that's not been brought up, but I just found it astonishing. It was a confusion over Dr. Sheff went through many lawyers, and so we thought at the time that a lawyer had his appearance on behalf of Dr. Sheff, and so anything that we were filing electronically was communicated to Dr. Sheff. I think you missed your best argument. The government needs the money. Go ahead. Thank you for that vote of support, Your Honor. I'll leave it at that. Thank you. Thank you very much, Mr. Stewart. Any rebuttal, Ms. Gelfman? Your Honors, in rebuttal I'd just like to make one point. The government's main response is that this money never belonged to Sheff. However, that applies to literally everything that's forfeited. The question is not does he have some moral right to the money. The question is was this interest forfeited, and the answer is yes. And, Ms. Gelfman, did you and your firm take this on court appointment? Yes. Okay. So nobody is getting paid at this point on either side of this dispute, and the court is grateful to counsel from both sides for your presence here today and your service to your clients. The case will be taken under advisement. Thank you, Your Honor.